No. 11,933.

KEELER, ET AL. v. UNION TRUST COMPANY.

Decided July 9, 1928. Rehearing denied September 10, 1928.

Messrs. FILLIUS, FILLIUS & WINTERS, for plaintiffs in error.

Messrs. HINDRY, FRIEDMAN & BREWSTER, for defendant in error.

*Department One.*

MR. JUSTICE WHITFORD delivered the opinion of the court.

THE Union Trust Company, a banking corporation of Spokane, Washington, brought suit against Frank W. Keeler, George E. Keeler and 'H. Walter Baldwin, Jr., incorporators, officers, agents and directors of Keeler Brothers and Company, a corporation organized under the laws of the state of Delaware, for damages for breach of contract, and had a verdict and judgment for $2,606.70. The defendants bring error.

The defendants incorporated themselves as Keeler Brothers and Company, under the laws of Delaware, January 11, 1921, and established its home office in the First National Bank Building, Denver, Colorado, and thereafter engaged in business without any attempt to' comply with sections 2321 and 2322, C. L. 1921, of our statutes, which were sections 23 and 24 of the original act, prescribing the conditions by which foreign corporations are authorized to do business in Colorado. The

defendants, who were the directors, officers and agents of the company, resided in Denver and carried on business in the name of Keeler Brothers and Company. The business so conducted was a general investment business, including the sale of bonds and securities. The action was to recover damages sustained by the failure of the defendants to deliver $65,000 in bonds of a total issue of $165,000 of the Minidoka highway district bonds of Idaho. The contract here in question was created entirely by letters and telegrams. On September 1, 1921, the defendants wrote plaintiff a letter signed "Keeler Brothers and Company, by George E. Keeler," suggesting "Should you be interested in purchasing part of these bonds at 85, we believe we can supply them to you, as one of our friends have arranged to take them on and have offered us a participation." Thereafter several telegrams were exchanged, containing offers and counter-offers as to the price of the bonds. On September 14, 1921, plaintiff sent a telegram to defendants as follows:

"Sept. 14, 1921 Spokane Wash

Keeler Brothers & Company

Denver Colorado

Answering your todays telegram we can use sixty-five thousand Minidoka bonds at price of eighty-five named in your letter. Block to cover prorata portion of each maturity. Commitment subject Wood Oakley approving opinion and to wire confirmation Thursday

Union Trust Company."

The next day defendants sent the following telegram:

"Denver Colo Sept 15 1921

Union Trust Co.

Spokane Wn.

Conditions materially different this market since September first letter considerable improvement and better demand Minidoka costing us more than price you offer can deliver sixty five Minidokas terms mentioned your telegram at eighty seven fifty and interest delivery

about three weeks this lowest price we could turn them at present.

Keeler Bros. & Co.''

Then telegrams were exchanged as follows:

Exhibit L.

''Septe 15, 1921, Spokane Wash
Keeler Brothers & Company
Denver, Colorado

Telegram Minidokas received  Your price too high For immediate acceptance offer eighty six for five thousand sixes terms set forth our telegram fourteenth.

Union Trust Company.''

Exhibit M.

''Denver Colo Sept 15 1921
Union Trust Co.,
Spokane Wn.

Will confirm sixty five thousand Minidokas terms outlined your telegram fourteenth eighty seven and interest  this best we can do  our margin very small  would like to do business with you  bonds should certainly be worth this figure  hope you can use them.

Keeler Bros. & Co.''

Exhibit N.

''September 15 1921 Spokane Wash
Keeler Brothers & Company
Denver, Colorado

Confirm purchase sixty five thousand Minidokas at eighty seven and interest accordance your telegram 15th Hope they will move well here.

Union Trust Company.''

Exhibit O.

''Denver Colo Sep 15

Union Trust Co
Spokane Wash

We confirm sale sixty five thousand Minidokas in accordance with your telegram of this date

Keeler Bros. and Co.''

The next day, September 16th, "Keeler Brothers and Company, by George E. Keeler," sent a letter from Denver to plaintiff, further confirming the various telegrams: "This will confirm the various telegrams passed between us and our sale to you of sixty-five thousand * * * Minidoka highway district bonds. * * * The bonds are being ordered printed, and we hope to have them available for delivery in from three to four weeks' time. * * * The remaining $100,000 of the bonds have also been sold to another banking institution and this cleans up the entire issue. * * * We are more than pleased to have this business with your good institution, and trust that the bonds will sell readily in your locality."

The plaintiff immediately resold the bonds and issued interim certificates for cash for the entire $65,000 worth of bonds at an advance of $2,606.70 above the purchase price at $87 and interest. On October 21, 1921, the defendants sent a telegram signed Keeler Brothers and Company, containing the following: "So far as we are concerned, you will receive no Minidoka bonds." Plaintiff sent the following reply: "Unless bonds are delivered to us under contract with you, we shall hold you responsible. On faith you would adhere to contract definitely made and clearly understood we have sold our entire commitment and breach by you will cause us specifically ascertained loss which you will have to make good. If you persist in refusal we shall start action immediately."

The plaintiff's efforts to buy this issue of bonds elsewhere to meet its engagements with customers were unsuccessful and it thereby lost its profit between the purchase price and the re-sale price made by it.

Our statute, section 2324, C. L. 1921, provides: "A failure to comply with the provisions of sections 23 and 24 of this act shall render each and every officer, agent and stockholder of any such corporation, so failing herein, jointly and severally personally liable on any and

all contracts of such company made within this state during the time that such corporation is so in default."

Defendants' contention is that the contract was a Washington contract and not one made in Colorado, and therefore the liability created by section 2324 of our statute is inapplicable and cannot be visited upon them. We do not so construe the telegrams and letters which constitute the basis of plaintiff's action. The law is elementary that where an offer is made in one state and accepted by letter or telegram in another, the contract or engagement is completed in the state where the acceptance of the offer takes place. The parties had exchanged offers and counter-offers as to the price of the bonds. In later negotiations the plaintiff, at Spokane, Washington, wired the defendants (Exhibit L) that the defendants' price was too high, and offered eighty-six. The defendants replied (Exhibit M) "Will confirm sixty-five thousand Minidokas * * * eighty-seven and interest." This telegram (Exhibit M) was not made to confirm any offer of eighty-seven and interest made by plaintiff to defendants, because no such offer up to that time had been made by it, but was a mere suggestion by defendants to plaintiff of what defendants would or might do in the event such an offer should be made by the plaintiff. The plaintiff's reply (Exhibit N) we construe to be a request for a confirmation of its then offer, which plaintiff made for the first time, of "eighty-seven and interest," and the defendants evidently so construed it (Exhibit N), for they immediately made their reply thereto from Denver (Exhibit O) "We confirm sale sixty-five thousand Minidoka in accordance with your telegram of this date," and signed the telegram "Keeler Brothers and Company." Until Exhibit "O" was sent by defendants in response to the request of plaintiff for confirmation, there was no contract. The confirmation and acceptance of plaintiff's offer (Exhibit O) by the defendants at Denver fixed the place of the consummation of the contract, and the ac-

ceptance by defendants at Denver made the contract a Colorado contract.

The defendants admit in their answer that they were the incorporators, officers, agents and directors of Keeler Brothers and Company, a foreign corporation of the state of Delaware, and that they were doing business in the City and County of Denver, Colorado, and it is not controverted that the foreign corporation had not domesticated and had made no attempt to comply with the laws of Colorado in that respect, until after the bringing of this action by the plaintiff. The statute is mandatory. The statute declares that a foreign corporation shall, before it is authorized or permitted to do business in this state, make and file a certificate with the secretary of state. This Keeler Brothers and Company did not do. The statute declares that a failure to comply with its provisions shall render each and every officer and agent of the corporation personally liable on any and all contracts of the company made within this state during the time the corporation is in default. The burden was on the defendants to show that their corporation was duly authorized and permitted to act in Colorado, so that they as officers and directors would be free from individual liability, and not having done so, or even attempted to comply with the clear mandates of the statute, they must pay the liabilities which they have incurred by their disregard of the law.

The defendants contend that the contract here under consideration pertains to interstate commerce, and therefore our state statute has no application here. We do not agree with this contention. The defendants admit in their answer that they were "doing business" in Colorado, and it appears that their home office was at all times in Denver, and further, we have just determined that the contract now under consideration was a Colorado contract, consummated at Denver, in the state of Colorado. It seems clear that there is no merit in this contention of the defendants.

360

We have examined with care all of the assignments of error and find no reversible error in the record.

Judgment affirmed.

Mr. Chief Justice Denison, Mr. Justice Burke and Mr. Justice Walker concur.